IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.  3:15 CR 358-JZ | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| ASIF AHMED SALIM, *et al.,* ) | DEFENDANT'S APPLICATION | |
| ) | FOR RELEASE ON BAIL | |
| ) | | |
| Defendants. ) | | |

**Introduction**

This motion is submitted on behalf of Defendant Asif Salim (hereinafter "Salim") in the above-entitled case seeking his release on bail pending the outcome of the case. As set forth below, Salim is neither a risk of flight nor danger to the community, and therefore should be released with appropriate conditions.

This application proposes conditions, including home detention and electronic monitoring, as well as multiple co-signers and the posting of substantial assets as security for the amount of the proposed bond, that further satisfy the criteria for bail. As a result, it is respectfully submitted that, pursuant to the standards prescribed in 18 U.S.C. §3142, Salim should be granted bail.

**Background**

Asif Salim is 35 years old. He is an American citizen, born and raised in Ohio, attended Ohio State University. He is the father of four children, their ages range from

1

8 years to 1 year old. He has been married to his wife, Farah, also an American citizen, for over 10 years. Salim studied engineering at Ohio State University; his wife has a degree in early childhood education. Salim's mother is an American citizen and both his mother and father in law are American citizens. If released, Salim would live in the family home built by his in laws 23 years ago, in Duluth Georgia. He has no prior criminal record. When originally detained as a result of this indictment in the U.A.E., where he had lived for four years, Salim did not challenge or contest deportation.

On September 30, 2015, an Indictment was filed, charging Salim with a violation of 18 U.S.C. §2339A, Conspiracy to Provide and Conceal Material Support and Resources to Terrorists, Providing Material Support and Resources to Terrorists, a violation of 18 U.S.C. §2339A and 2, and Conspiracy to Obstruct Justice, a violation of 18 U.S.C. §1512(c)(1) and (c)(2). It is generally alleged that Salim was copied on a series of emails between co-defendants, which discussed, among other things, Anwar Awlaki and his speeches; Salim's participation in the conspiracy was financially limited to one check for $2000 deposited by a codefendant on July 13, 2009. (Paragraph 223 of Count 1.)  It is also generally alleged that Salim knew these funds would be used to support terrorism.

It is further alleged Salim made false statements to the FBI in stating that a codefendant didn't inform him about the purpose of any funds provided to another codefendant and that he himself never provided any funds to a codefendant. (Paragraph 275, Count 1). Finally, it is alleged that he deleted fifty emails from an email inbox between November 22, 2011 and January 9, 2012. (Paragraph 277, Count 1).

**Proposed Grounds and Conditions for Release**

While it is anticipated that the government may seek detention (based on conversations with the Assistant United States Attorney), the following factors, detailed **post**, overcome the government's objections to Salim's release:

(1) Salim, who is 36 years old, does not have any prior criminal record, or any history or incidents involving violence. Moreover, during the two months he has been in custody, he has been a model inmate without disciplinary or other infractions.

(2) Salim, a U.S. citizen, born in Ohio, who has resided with his family in the U.S. most of his life, will not be able to travel because (a) the government already possesses his passport, which is believed to have been cancelled and he possesses no other travel documents or passports; (b) he consents to strict electronic monitoring and home confinement; and (c) he is without any funds or financial wherewithal other than what he receives from his family, who as sureties on any bond will *not* provide him funds beyond that required for ordinary subsistence on a daily basis. Neither he nor his wife owns any property outside of the United States.

(3) The imposition of strict conditions of pretrial supervision, including electronic monitoring, home confinement, and strict reporting, by both telephone and in person, in accordance with the schedule set by Pre-Trial Services will be sufficient. Indeed, a co-defendant, Salim's brother, Sultane Salim, charged with the same allegations and on similar bail conditions, was granted pretrial release. *See Doc 24-1.*

(4) Salim's family is prepared to post property that would fully secure bond, and family members, one of whom is a current Assistant District Attorney and another who is currently a police detective, are prepared to co-sign a bond securing his release.

(5) Salim's mother-in-law, Nikhat Nizamuddin, and his wife, Farah, are willing to act as custodians for Salim at the family home in Duluth, Georgia.

(6) Salim's wife is prepared to surrender her passport.

(7) A pretrial report was previously prepared in the Eastern District of Virginia at Salim's initial detention hearing which *recommended his release* to reside with his family in Georgia, (based on conversations with Salim's former Federal Public Defender and the Assistant United States Attorney) under certain conditions.

## The Legal Standards Regarding Pretrial Release

There are several factors, operating separately or in combination, that justify granting Salim's application for bail pursuant to 18 U.S.C. § 3142, the statute governing release or detention of a defendant pending trial. Indeed, pursuant to §3142(g), in determining whether there are conditions of release that would "reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must take into consideration,

> (1) "the nature and circumstances of the offense charged;"
> (2) "the weight of the evidence against the person;"
> (3) "the history and characteristics of the person including –
>     (A) the person's character, physical condition, family ties,…

4

financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;" and

(4) "the nature and seriousness of the danger to any person or the community, that would be posed by the person's release." *See* 18 U.S.C. . §3142(g).

Indeed, if the Court, when considering the factors enumerated in §3142(g), determines that Salim is eligible for release on conditions, the Court must then order his pretrial release "subject to the least restrictive further condition, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community," pursuant to §3142 (c)(1)(B).

As a threshold matter, it has been long and well established that pre-trial release is the norm, and should be denied "[o]nly in rare circumstances." *Sellers v. United States*, 89 S.Ct. 36, 38 (1968) (Black, J., in chambers). Furthermore, when balancing the arguments and evidence for and against pre-trial release, any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Herzog v. United States*, 75 S. Ct. 349, 351 (1955) (Douglas, J., in chambers). In order to justify the extraordinary measure of pre-trial detention, the Court must conclude that the risk of flight or danger to the community is "serious," and that the risk cannot be reasonably alleviated by imposing conditions of release upon the defendant. 18 U.S.C. §3142(f)(2)(A)-(B) & §3142(c)(1)(B).

***Analysis of the Factors Relevant to Pretrial Release***
***Demonstrates That Salim Should Be Granted Bail***

5

### A. *Salim Does Not Have Any Prior Criminal Record or History of Violence*

Salim, 35 years old, does not have any prior criminal record. Nor does he have even the slightest history of violence. Both his wife of over 10 years, Farah, his mother in law, Nikhat Nizamuddin, and his mother, Shakila Salim, also a U.S. citizen, will attest to the court that he is a loving, caring husband, father, son and son-in-law with no history of violence.

The allegation of the crime of terrorism in the indictment is mitigated here by the alleged circumstances of the crime. Salim is alleged to be a minor and limited participant in the conspiracy. The government claims he made a single transaction of a check for $2,000, which was deposited by a codefendant nearly 7 years ago.

There is no evidence that Salim had contact with Anwar Awlaki nor others alleged to be fighting in support of designated Foreign Terrorist Organizations (FTO's). There is no evidence that Salim himself was involved in acts of violence. Every act that the government alleges is not an act of violence; it is an act of allegedly assisting others.

Consequently there is no real possibility that he will engage in acts of material support of terrorism if released under the conditions set by the Court. Any concerns about danger are entirely speculative.

### B. *Salim Does not Present a Risk of Flight*

There are several factors that effectively eliminate the risk of flight from consideration with respect to Salim's pretrial release:

(1)     Salim is a U.S. citizen, born in Ohio, who has resided in this country for all but four years.

(2)     Salim had only a U.S. passport, which is currently in the U.S. government's possession; it is also believed to have been cancelled; he has no other travel documents. Thus, Salim does not possess any documents that would permit him to engage in international travel.

(3)     Salim consents to electronic monitoring, home confinement, and in person and telephonic reporting to Pre Trial Services as set forth by their schedule.

(4)     Salim, not a man of means, will be entirely financially dependent on his family. As a result, he does not maintain any independent capacity to fund any travel, much less international travel. His family members will attest to their commitment not to provide him any financial or other resources that would enable him to travel, except that required by the Court. They are also amenable to whatever formal conditions the Court imposes in that respect.

(5)     Neither Salim nor his wife own any property outside the United States. Upon his arrest and deportation, his wife moved their family from the U.A.E. to the home where she now resides with her parents in Georgia.

      C.     ***Sufficient Stringent Conditions Exist to Ensure Salim's Appearance***

In determining, pursuant to §3142(g), whether there are conditions of release that would "reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court has available a

7

broad panoply of strict conditions that have proven reliable in the vast array of cases that arise, and defendants that appear, in federal court.

### 1. *The Court Possesses Authority to Impose Conditions of Pretrial Release Sufficiently Strict to Ensure Salim's Appearance*

Here, a number of traditional effective conditions – to all of which Salim consents – are available, including:

(a) strict electronic monitoring;

(b) home confinement;

and

(c) strict telephonic and in-person reporting to Pre-Trial Services.

### 2. *Being Indicted on a Crime of Terrorism Does Not Dictate Detention in All Cases* : *The Examples of Sultane Salim' s & Others' Pretrial Release*

Bail for Salim would be consistent with prior circumstances in this very indictment. Codefendant Sultane Roome Salim, Salim's brother, charged with the same allegations as Asif, was ordered released with a similar set of conditions by U.S. Magistrate James R. Knepp, as proposed herein. *See Doc 24-1*.

Other District courts have found conditions of release appropriate in cases that carried charges of terrorism related offenses. In *United States v. Harcevic*, 15 Cr. 49 (CDP_DDN) (E.D. Missouri), the defendant, not an American citizen unlike Salim, was charged with material support of terrorism as well as conspiracy to murder and maim overseas, was ordered released. The government appealed that order to the Magistrate Judge in the Eastern District of Missouri, who affirmed the previous order releasing Mr. Harcevic. *See* Report & Recommendation, dated April 14, 2015, by Magistrate Judge David D. Noce, E.d. Mo. (*Docket # 141*).

8

For other examples, see also: *USA v.Muna Osman Jama*, 1:14-cr-230, US District Court, Eastern District of Virginia, Doc. 18 –Order setting Conditions of Release dated July 25, 204, and *USA v. Hinda Osman Dhirane*, 1:14-cr-230, US District Court, Eastern District of Virginia, Doc. 26 – Appearance Bond dated July29, 2014, granted out of the US District Court, Western District of Washington, assigned Case #MJ14-311. Defendants in both of these cases were charged with terrorism crimes and were granted home detention with certain conditions of release, similar to what Sultane Salim was given in this case.

    **D.**    *The Government's Case is Deficient in Material Respects*

The Indictment sets forth allegations that reveal the material weaknesses in the government's case, which alleges that Salim entered into a conspiracy to support terrorists, namely Anwar Awlaki, before Awlaki was designated as a terrorist by the United States and that Salim further agreed that he "was obligated to participate in violent jihad against the United States and its military throughout the world." These allegations are largely limited to a single check by Salim deposited to an account by a codefendant 7 years ago and a series of emails among some codefendants and others, on which Salim was copied. There is no evidence that the funds from Salim's check went to Anwar Awlaki nor to fighters supporting terrorist organizations. In particular, the Indictment is devoid of evidence establishing his intent to provide material support to Awlaki, to terrorism or that he was obligated to join in violent jihad. And further, there is no evidence that the emails the government claims Salim deleted two years after the aforementioned check was deposited, establishes a conspiracy.

    **E.**    *Salim's Family Are Prepared to Post Substantial Assets to Secure Bond More than Sufficient to Ensure His Appearance at Future Court Proceedings*

Salim proposes a bail package that would permit his release secured by real property. His mother and father in law are ready to post their family home, located in Duluth, Georgia, as security for a proposed bond. The Gwinnett County, Georgia Annual Notice of Assessment, 2015, valued the property at $326,500, which value has increased according to comparable home sales. This is the family home built by them over 23 years ago, in which Salim's wife, Farah, was raised. His wife and four children, along with his mother and father in law, now live in the 5 bedrooms, 4,500 square foot home and this is where he would also reside.

Additionally and of note, Salim's sister and brother in law are ready to post their family home, also located in Gwinnet County, Georgia, with equity of $145,000. Salim's sister in law is a current Assistant District Attorney in Gwinnett County, Georgia; her husband, a proposed co-signer, is currently a detective with the police in that county. It is respectfully submitted that the members of Salim's family who serve their communities as a prosecutor and in law enforcement would not lightly offer their family home as security for Salim's bail unless they were certain of his reliability to appear in all future court proceedings and his lack of danger to the community.

If the Court sets bail and the family members are approved to act as sureties and/or co-sign the bond, they are prepared to sign the bond immediately.

Thus, all of the above factors and information sufficiently rebut 18 U.S.C. §3142(e)(3)(A)'s statutory presumption against bail (activated by the nature of the charge).

**Conclusion**

For all these reasons, it is respectfully submitted that the Court should set a reasonable bail for Salim, concurrent with any conditions-including electronic monitoring, home confinement, and/or any other strict terms-the Court is empowered to impose.

Respectfully submitted,

 /s/ Linda Moreno

LINDA MORENO
*Pro Hac Vice Attorney Salim*
(Cal: 92854; Florida: 11283)
P.O. Box 10985
Tampa, Florida 33679
(813) 247-4500
(855) 725-7454
lindamoreno.esquire@gmail.com

**Certificate of Service**

The undersigned certifies that a true and correct copy of Asif Salim's Application for Release on Bail was electronically filed and served on the Court's electronic Filing system.

Dated this 12th day of January 2016

                                     /s/ Linda Moreno

                                     LINDA MORENO
                                     *Pro Hac Vice Attorney-Asif Salim*
                                     (Cal: 92854; Florida: 11283)
                                     P.O. Box 10985
                                     Tampa, Florida 33679
                                     (813) 247-4500
                                     (855) 725-7454
                                     lindamoreno.esquire@gmail.com