IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DEVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ASIF AHMED SALIM, *et al.*

    Defendant.

Case No. 3:15-cr-00358-JZ

**ASIF SALIM'S MOTION TO DISMISS COUNTS I AND II OF THE INDICTMENT PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(B)**

**1. Introduction**

Mr. Salim respectfully requests this Court dismiss Counts I and II of the Indictment pursuant to Federal Rule of Criminal Procedure 12 (b)(3)(B) because the allegations as asserted in the Indictment fail to state the specific intent necessary for a violation of 18 U.S.C. § 2339A, as charged, with conspiracy to provide material support to terrorists and the provision of material support to terrorists.

**2. Background**

Mr. Salim is charged, along with defendants Yahya Farooq Mohammad, Sultane Roome Salim, and Ibrahim Zubair Mohammad with conspiracy to provide material support of terrorists in Count I and material support of terrorists in Count II, both in violation of 18 U.S.C. § 2339A. Section 2339A(a) provides, in relevant part, that:

1

> Whoever *provides material support or resources* or conceals or disguises the nature, location, source, or ownership of material support or resources, *knowing or intending that they are to be used* in preparation for, or in carrying out, a violation of section…1114…2332,…2332b…of this title…*or conspires to do such an act*…shall be fined under this title, imprisoned not more than 15 years, or both…. (emphasis added)

The allegations supporting the charge of § 2339A are contained within the "Manner and Means" narrative of Count One of the Indictment, at ¶¶ 28-35. It is alleged that the object of the conspiracy was to provide support to Awlaki *knowing such support would be used to carry out "violent jihad" against the United States and United States military in Iraq, Afghanistan, and throughout the* world in violation of 18 USC ¶¶ 1114, *(killing of officers and employees of the United States), 2332 (killing of U.S. nationals), 2332b (acts of terrorism transcending national boundaries), and 2339C (financing terrorism) by Awlaki.*

Specifically, the Government alleges Mr. Salim sent $2,000 on or about July 13, 2009 to co defendant Yahya Farooq Mohammad through his brother Ibrahim, with the intent to use these funds for assistance to Anwar Al-Awlaki in furtherance of "violent jihad" against the United States. [1]. *Id*., Count One, ¶¶ 218-222. The government's prosecution is based on various emails communications between the defendants; those specifically involving Mr. Salim can be found in the Indictment at ¶ 63, ¶64, ¶65, ¶66, ¶101, ¶142, ¶143, ¶183, ¶184, ¶189, ¶196, ¶212, ¶218, ¶220, ¶228, ¶243, ¶248 and ¶257[2]. For the majority of those 18 emails, Mr. Salim was blind carbon-copied (hereinafter,

---

[1] 1 All of the alleged communications recited in the Indictment regarding Al-Awlaki pertinent to Counts I and II, occurred *before* he was designated as a global terrorist and leader of AQAP. *See* ¶ 11 of Indictment.

[2] For the purpose of this motion, only emails related to Count One and Two are included.

2

"bbc'd) without any comment by him. Mr. Salim did reply on a limited number of those emails, and a summary of his replies is below.

¶65 – Mr. Salim forwarded an email to Sultane Salim (his brother) without comment;

¶101 – Mr. Salim commented about the suffering of Muslims in the world, the power of prayer and the question of duty;

¶ 212 – Mr. Salim wrote about coming across scriptural references about "giving tidings of Hell-fires to the dead kuffar in their graveyards" and attached the document discussing these references;

¶218 – Mr. Salim sent an email to defendant Farooq Mohammad and explained his difficulty in wiring money;

¶ 221 – Mr. Salim forwarded an email to defendant Sultane Salim (Asif Salim's brother) which contained Ibrahim Zubair Mohammad's address with the message "Here's the info. Git 'er done";

¶257 – Mr. Salim sent an email to co defendant Farooq Mohammad and asked about "the southern front".

His single financial transaction and the few political and/or religious email comments made by Mr. Salim fail to establish any criminal conduct by him. The indictment fails to identify, with factual particularity, the nature of the "material support" provided, the nature of the conspiracies (under 18 U.S.C. ¶¶ 114, 2332, 2332 (b) and, critically, any nexus to Mr. Salim's specific intent to support those individual conspiracies. The government's prejudicial and irrelevant recitation of the notorious crimes of Nidal Hasan in the Fort Hood killings and Umar Abdulmutallab, the

3

'underwear bomber' in the indictment are merely provocative and misleading and fail to establish any connection between Mr. Salim and those acts.

**3. Counts I and II should be dismissed because they fail to state an offense & fail to allege the requisite specific intent under 18 USC § 2339A**

Mr. Salim argues that the above allegations regarding his intent are insufficient to support the specific intent requirement of § 2339A and that Counts I and II fail to identify the specific intent to aid a terrorist act. The plain language, legislative history, commentary, and universal interpretation by considering courts of § 2339A all require that the Government plead and prove that the defendant had the specific intent to materially support one of the enumerated crimes in § 2339A. The government has only alleged that Mr. Salim provided one check to a codefendant, but it failed to prove that Mr. Salim had the specific intent to use that money to support Anwar Al-Awlaki in furtherance of "violent jihad" against United States.

While the general intent to support an individual or organization would be sufficient to charge a violation of 18 U.S.C. § 2339B (material support of a terrorist organization), it is insufficient to charge a violation under § 2339A, which requires the specific intent to support the enumerated crime. Accordingly, the Indictment fails to allege an offense under § 2339A because the supporting facts regarding intent are insufficient to meet the specific intent requirement of § 2339A. Besides, it is inconsistent with the legislative intent and basic jurisprudence to allow the government to charge Mr. Salim under § 2339A without proving specific intent.

An indictment serves two main purposes: "(1) to provide the defendant with a description of the charges against him to enable him to prepare a defense and to plead his

conviction or acquittal for protection against further prosecution for the same charges and (2) to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction." *United States v. Stone,* 2011 U.S. Dist. LEXIS 144324, *7 (E.D. Mich. Dec. 15, 2011) (citing *Reeder v. United States*, 262 F. 36, 38 (8th Cir. 1919)). Therefore, a valid indictment will allow a defendant to do two things: (1) prepare a defense and (2) plead double jeopardy to a subsequent prosecution. *United States v. Mallen*, 843 F.2d 1096, 1103 (8th Cir. 1988). The indictment must contain factual allegations, not merely conclusions of law. *Stone,* 2011 U.S. Dist. LEXIS 144324, *7. In reviewing a motion to dismiss, the Court should take as true the specific factual allegations of the indictment. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n. 16 (1952).

Rule 12(b) of the Federal Rules of Criminal Procedure provides in relevant part that "[a]ny defense, objection, or request that the court can determine without a trial of the general issue" may be raised before trial by motion. This includes a motion to dismiss an indictment for a failure to state an offense. Fed. R. Crim. P. 12(b)(2). Courts have routinely held that, while it is often sufficient for an indictment to track the language of the statute, "[f]or purposes of Rule 12(b)(2), a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 227 F.3d 678, 685 (3d Cir. 2000); see also *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012); *United States v. Alsugair*, 2003 WL 1799003 (D.N.J. April 3, 2003); *United States v. Murillo,* 2008 U.S. Dist. LEXIS 19568, *4 (N.D. Iowa Mar. 13, 2008). In other words, "the indictment must include all of the elements of the crime alleged, ... as well as

5

specific facts that satisfy all those elements; a recitation 'in general terms of the essential elements of the offense' is not sufficient." *United States v. Wecht*, 2006 U.S. Dist. LEXIS 44842, *3 (W.D. Pa. June 29, 2006) (citing *Panarella,* 227 F.3d at 684-85).  To ensure that the specific facts alleged in the indictment are sufficient to constitute the crime charged, a "district court may review the facts in the indictment to see whether, as a matter of law, they reflect a proper interpretation of criminal activity under the relevant criminal statute*." Id.* Thus, "[t]he constitutionality of a statute as well as its correct interpretation can be raised in a motion to dismiss." *United States v. Islamic Am. Relief Agency,* 2009 U.S. Dist. LEXIS 106021, *4 (W.D. Mo. Nov. 13, 2009). Accordingly, the specific facts alleged in the Indictment must be scrutinized to determine whether they meet constitutional and statutory standards.  In this case, such scrutiny reveals that the Indictment is fatally deficient.

Mr. Salim submits Counts I and II should be dismissed because the Indictment charges him with a violation of §2339A without proving a specific intent to materially support one of the enumerated crimes in § 2339A(a). Thus, the Indictment erroneously alleges the general intent, which might only be sufficient under §2339B.

    A.   Courts Have Universally Interpreted §2339A(A) To Require
          A Specific Intent To Aid A Terrorist Act

Section 2339A requires that a defendant specifically intend or actually know that the material support he provides *will be used* for a specific violent offense (in this case, conspiracy to assist Al-Awlaki in furtherance of "violent jihad" against United States in the form of killing of officers and employees of the United States, killing of U.S. nationals and or acts of terrorism transcending national boundaries.  *See* 18 U.S.C.

6

2339A(a).³ This Court, along with the majority of federal courts, has firmly ruled that § 2339A is a specific intent crime, and the required mens rea here is "knowingly and intentionally", which differs from 18 U.S.C. 2339B. *See United States v. Amawi,* 545 F. Supp. 2d 681, 684 (N.D. Ohio 2008) (citing *U.S. v. Sattar*, 314 F.Supp.2d 279, 303 (S.D.N.Y.2004) "[t]he statute lays out with sufficient definiteness what is prohibited, and the specific intent is required ..."); *Sattar,* 314 F. Supp. 2d at 305; *Humanitarian Law Project v. Mukasey*, 509 F.3d 1122, 1133 (9th Cir. 2007) overruled on other grounds by *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ("Congress could have, but chose not to, impose a requirement [in section 2339B] that the defendant act with the specific intent to further the terrorist activity of the organization, a requirement clearly set forth in section[] 2339A . . . but left out of section 2339B.") (emphasis added); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1058 (S.D. Ohio 2007) ("§ 2339A was limited to individuals (such as donors) who intended to further the commission of specific federal offenses …").

For example, a defendant challenged his § 2339A charge arguing that he did not know the people he was training were going to join LeT (a Designated Foreign Terrorist Organization). *United States v. Khan*, 461 F.3d 477, 490 (4th Cir. 2006), as amended (Sept. 7, 2006). The court recognized that knowledge was an element to this charge, however the court ruled for the government because the evidence clearly showed the defendant continued to offer training *after* he learnt that the people under training were going to join LeT. Id. In a civil case based on Anti–Terrorism Act (ATA), plaintiffs

---

³ Although Section 2339A is entitled "Providing material support to terrorists," the "title of a statute '[is] of use *only* when [it] sheds light on some ambiguous word or phrase' in the statute itself." Carter v. United States, 530 U.S. 255, 267 (2000) (quoting Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 212 (1998)) (emphasis added). It goes without saying that the list of specific statutory references in Section 2339A(a) is not ambiguous.

alleged that Saudi American Bank financed some construction projects undertaken by Osama bin Laden and al Qaida in the Sudan, and concluded that Saudi American Bank violated § 2339A by knowingly providing material support to terrorists. *In re Terrorist Attacks on Sept. 11, 2001*, 462 F. Supp. 2d 561, 564 (S.D.N.Y. 2006). The court held that the plaintiff had failed to state a claim because they did not allege any facts to support an inference that Saudi American Bank knew or should have known that funds they purportedly provided for construction projects in Sudan would aid al Qaeda. *Id.*

Because the contours of the government's case are not yet clear, we have little besides the indictment to determine the conduct, which the government alleges, supports the allegations. The email communications involving Mr. Salim are premised on speech.

The 6th Circuit has recognized that the First Amendment does not prohibit the evidentiary use of speech to establish motive or intent; however the court has restrained such use to establish evidence of a conspiracy, *not a specific intent to a certain crime*. See *United States v. Amawi,* 695 F.3d 457, 482 (6th Cir. 2012). For example, in *Amawi*, a defendant argued that his conviction violated his First Amendment right to speech and religion. *Id.* The court rejected this argument, and pointed out that while a conviction cannot simply be based on conversations about religious and political belief or even a crime, conversations about forming an agreement to engage in criminal activities can be a base to a conspiracy. *See Id.*

The Indictment here fails to establish the required specific intent under § 2339A. From the Indictment, Mr. Salim has been "bcc'd" and received a few emails, which usually express some political criticisms about the West, and reference some Islamist materials. In an email forwarded to Mr. Salim, which he then forwarded on to Sultane

8

Salim, it contained a recitation from a blog entry of Awlaki that discussed Jihad as "*not just picking up a gun and fighting. Jihad is broader than that. What is meant by Jihad in this context is a total effort by the ummah to fight and defeat its enemy…Fight the disbelievers with your self, your wealth, your tongues. It is what Clausewitz would refer to as 'total war but with the Islamic rules of engagement. It is a battle in the battlefield and a battle for the hearts and minds of the people.*" What criminal intent should be gleaned from this particular passage? This passage discusses a battle for the hearts and minds of its audience, outside of fighting. Would the government agree that this passage shows that Mr. Salim's intent evidences his belief in a nonviolent struggle for the Muslim world? It is doubtful.

  The emails that "bcc'd" Mr. Salim made no mention of any plan to go to see Al-Awlaki, let alone to fund any specific operations of terrorist activity. There is simply no nexus between the alleged material support by Mr. Salim and any terrorism, especially in connection with that of the government's invocation of the infamous crimes of Hasan and Abdulmutallab, which bear a desperate attempt to smear the defendant by a confusing and inarticulate association that does not exist.

  A fair reading of the indictment shows that Mr. Salim was provided with the least information regarding the plans of the other three defendants. His infrequent replies to those emails (six times) consist of varying opinions, but none of them evidence his particular support of violent jihad. His first involvement in these emails, is found at paragraph 65 in the indictment, in which he simply forwarded an email to his brother, without any comments. Thereafter, he was left out in series of emails regarding financing issues between the Mohammad brothers until paragraph 101, in which he expressed some

of his religious and political frustrations, which had nothing to do with Farooq Mohammad's trip to see Al-Awlaki or to engage in violence against Americans. Another email can be found at paragraph 212, entirely unconnected to Al-Awlaki. Arguably the only relevant emails appeared at paragraph 218-222 (the series of "trip" emails), in which Mr. Salim offered money to Farooq Mohammad, with no specification it be used to fund violence against Americans.

Reading these emails in the light most favorable to the Government, the government fails to establish the intent element of § 2339A. From the series of "trip emails", it is unclear as to what "trip" Mr. Salim was referring or, more importantly, the purpose of the trip. Farooq Mohammad revealed his trip plans to Yemen *after* he received Mr. Salim's money. According to the indictment, Farooq Mohammad exchanged a series of emails discussing a trip to see Awlaki with unindicted co-conspirators, not with Mr. Salim. Paragraph 213. Thus, it is unreasonable to say that Mr. Salim had the specific intent to fund the leading defendant's trip to see and assist Al-Awlaki in furtherance of jihad against the United States.

The fact pattern here is clearly distinguishable from the cases discussed above, where defendants heavily participated in the conspiracy and continued to support terrorist activities after they learned the nature of the activity supported. As the 6th Circuit has recognized, a conviction cannot simply be based on conversations about religious and political beliefs unless such conversation can establish a conspiracy or cooperation. These emails do not establish Mr. Salim's criminal intent; they quote some scriptural references, political and religious opinions, some suggestive of different perspectives on jihad, both

10

violent and nonviolent. None show with any factual particularity Mr. Salim's criminal intent as required by the statute.

    B.   The Legislative History Of § 2339A And § 2339B Makes Clear That Mr. Salim May Not Be Charged With A Violation Of § 2339A

Congress intentionally passed both § 2339A and § 2339B to deal with different issues: § 2339A targets donors intending to further the commission of specific federal offenses; while § 2339B targets donors who acted without the intent to further federal crimes. See *United States v. Assi*, 414 F. Supp. 2d 707, 722 (E.D. Mich. 2006); *Humanitarian Law Project*, 380 F. Supp. 2d at 1146. Specifically, Congress passed § 2339B to deal with a problem that § 2339A cannot deal with, which is the fungibility of money. *Id.* at 1147. To prosecute a money/cash donor under § 2339A, the government generally needs to prove that this donor has the specific intent to fund a terrorist plot, which is very hard to do due to the fungibility of money. See Peterson, Addressing Tomorrow's Terrorists, 2 J. Nat'l Security L. & Pol'y 297, 348 (2008); Robert M. Chesney, The Sleeper Scenario: Terrorism-support Laws and the Demands of Prevention, 42 Harv. J. on Legis. 1, 26-30 (2005). Congress, concerned that terrorist organizations would raise funds "under the cloak of a humanitarian or charitable exercise," sought to pass legislation that would "severely restrict the ability of terrorist organizations to raise much needed funds for their terrorist acts within the United States." H.R. Rep. 104–383, at *43 (1995). Thus, Congress later passed § 2339B to close this "gap" left by 2339A, and provided that it is a crime under 2339B to knowingly provide material support or resources to a foreign terrorist organization regardless of whether or not the support is intended to support the terrorist organization's illegal activities. *Id.*; See 18 U.S.C. § 2339B(a)(1) (1996 ed.).

11

This legislative intent has been reflected in the government's policy. See <u>Terrorist Financing</u>, The United State Attorneys' Bulletin, pp 30, Vol 51, No. 4, 2003, available at www.justice.gov/sites/default/files/usao/legacy/2006/02/14/usab5104.pdf. The Department of Justice has recognized that the exacting intent requirement of § 2339A makes it a less powerful tool compared to § 2339B, thus federal prosecutors generally only use § 2339A when cases involve investigations which uncover the material support-type of activity which either predates the first FTO designations (October 7, 1997) or which cannot be pinpointed as undertaken on behalf of a particular FTO. *Id.* Sometimes they also use § 2339A to prosecute people who provide a specific type of support that is inherently violent or dangerous. *Id.* For example, in *Khan*, the defendants' § 2339A charge was based on their help in military training and military device purchases, which are obviously into the "inherently violent or dangerous" category. *Khan*, 461 F.3d at 490.

Applying the legislative history to the present case, Mr. Salim's conduct, as alleged in the Indictment, of supplying $2,000 to Farooq Mohammad without a specified use, and without the requisite intent, is precisely what the commentators on § 2339A described as being insufficient to constitute a criminal charge under that section. § 2339A is simply not the correct section to deal with material support that involves cash and money, because the fungibility nature of cash basically prevents the government from proving the exacting intent that the defendant intended to use his/her money to fund a specific terrorist plot. This is exactly what happened in this case: the government alleges Mr. Salim sent $2,000 dollars to the codefendant with no assertion that Salim had knowledge of any terrorist plot, and it cannot prove that Mr. Salim intended to use his $ 2,000 to fund any plot.

The government chose not to charge Mr. Salim with a violation of § 2339B. It is not hard to understand the government's strategy; they could not find a genuine connection between Mr. Salim and any terrorist groups. But allowing such strategy is also inconsistent with the constitutional jurisprudence behind § 2339A, as will be discussed below.

C. Permitting A Charge Of §2339A Without Specific Intent Is Inconsistent With The Constitutional Jurisprudence Behind § 2339A

Permitting Mr. Salim to be tried on a general intent basis under § 2339A not only violates the plain language and congressional intent of the statute, it also conflicts with the constitutional jurisprudence behind § 2339A set by the Supreme Court and other federal courts.

In the landmark case *Humanitarian Law,* the Supreme Court held that the language in § 2339B lawfully permitted prosecution of an individual who provided support to a terrorist organization even if the individual intended the support to be used for purely lawful purposes because the support was fungible. See *Humanitarian Law Project*, 561 U.S. at 31. The Court, however, limited the fungible theory to § 2339B, because, as the Supreme Court implied, applying the fungible theory to § 2339A would have dangerous and unconstitutional consequences. See. *Id.* This jurisdiction has further clarified that § 2339A's constitutionality is based on the fact that its language is clear as to what kind of mens rea is required, which is "knowing and intending … in preparation for, or in carrying out, a violation of one of statute's enumerated criminal offenses." See *Amawi,* 545 F. Supp. 2d at 684. The definiteness of this mens rea requirement guarantees that anyone of 'ordinary intelligence' would understand the activities to be prohibited. *U.S. v. Awan*, 459 F.Supp.2d 167, 179 (E.D.N.Y.2006); *Sattar,* 314 F.Supp.2d at 303 ("

13

… the statute lays out with sufficient definiteness what is prohibited, and the specific intent that is required, so that enforcement of the statute is not left to the arbitrary and discriminatory choices of law enforcement officials). In sum, the specific intent component of § 2339A is its constitutional core that enables it to survive a lot of constitutional challenges based on vagueness. See *Id.;* also see *Abdi*, 498 F. Supp. at 1052.

Charging Mr. Salim under § 2339A while not being able to establish specific intent will compromise § 2339A's constitutionality. The consequence will result in confusion about the difference between the elements of 2339A and 2339B. For instance, suppose someone gives money to an overseas fighter intending for the overseas fighter to spend the money on food (or even self-defense), believing that the money will be so used. The plain language of § 2339A does not prohibit this conduct, yet this conduct is entirely consistent with the specific allegations against Mr. Salim in the Indictment. Eventually, allowing this kind of charge will invite litigation asking a question that has been answered again and again: is § 2339A a specific intent crime or a general intent crime?

The Government's use of § 2339A would also encourage arbitrary and discriminatory choices of law enforcement. A statute encourages arbitrary enforcement when it fails "to describe with sufficient particularity what a suspect must do in order to satisfy the statute." *Kolender v. Lawson*, 461 U.S. 352, 362 (1983). Although section § 2339A is not "standard less" as written, the Indictment's rewrite, which effectively removes the statute's specific intent requirement, has no limiting principle. *Humanitarian Law,* 561 U.S. at 31 (noting that § 2339B has a "natural stopping place," because it "reaches only material support coordinated with or under the direction of a

14

designated foreign terrorist organization"); *Awan,* 459 F.Supp.2d at 179 (finding section § 2339A not "vague-as-applied" but *only* because the statute "raise[d] the scienter requirement" from section 2339B and required "specific intent" to support a "specific crime.").

The government's strategy is transparent; if they cannot establish a § 2339B claim against a defendant due to its failure to find a connection to a "FTO", it will then default to § 2339A, without alleging a specific intent, making a similar charge. This kind of practice fits congruently to the definition of "arbitrary and discriminatory choices of law enforcement" and thus is inconsistent with the constitutional jurisprudence behind the law.

CONCLUSION

For the reasons stated above, Mr. Asif Salim respectfully prays that this Honorable Court dismiss Counts I and II as failure to state an offense, failure to state with factual particularity the requisite criminal intent on the part of Mr. Salim to violate this particular law.

DATED this 9th day of May, 2016.

Respectfully submitted,
*/s/ Linda Moreno*
LINDA MORENO
*Pro Hac Vice Attorney Salim*
(Cal: 92854; Florida: 11283)
P.O. Box 10985
Tampa, Florida 33679
(813) 247-4500
lindamoreno.esquire@gmail.com

15

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of defendant Asif Salim's Memorandum of Law in Support of Motion to Dismiss was electronically filed and served on the Court's electronic filing system:

DATED this 9th day of May, 2016.

    Respectfully submitted,
*/s/ Linda Moreno*
LINDA MORENO
*Pro Hac Vice Attorney Salim*
(Cal: 92854; Florida: 11283)
P.O. Box 10985
Tampa, Florida 33679
(813) 247-4500
lindamoreno.esquire@gmail.com