# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:15-cr-358 |
|     Plaintiff | |
| v. | ORDER |
| Asif Ahmed Salim, et al., | |
|     Defendants | |

This matter is before me on the government's emergency motion for a stay pending the appeal of my order releasing Defendant Asif Salim on bond. (Doc. No. 315). Salim opposes. (Doc. No. 321).

On January 4, 2018, Salim filed his third renewed application for release on bail. (Doc. No. 291). The government filed a brief in opposition. (Doc. No. 295). On February 8, 2018, I held a bond hearing, at which time I reopened the matter of bond with respect to Salim and ruled he should be released pursuant to conditions I set forth. (Doc. No. 306 at 6-8 & 41). The government requested, and I granted, a one-week stay to give it time to determine if it would appeal my decision. (*Id.* at 44). On February 15, 2018, the government filed its notice of appeal. (Doc. No. 312). On February 20, 2018, the government filed its emergency motion for a stay. (Doc. No. 315).

I must consider four factors when deciding whether to grant a stay. *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). I am to consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Id.* I consider

these factors not as prerequisites, but as "interrelated considerations that must be balanced together." *Id.* I discuss each below.

**Likelihood of Success**

On appeal, the Sixth Circuit will review my factual findings for clear error, and will "consider mixed questions of law and fact-including the ultimate question whether detention is warranted-de novo." *Stone*, 608 F.3d at 945.

At the bond hearing, I recognized that there is a rebuttable presumption of detention in this case. (Doc. No. 306 at 8); *see* 18 U.S.C. § 3412(e)(3)(C). But this "presumption in favor of detention imposes only a burden of production on the defendant, and the government retains the burden of persuasion." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The defendant's burden is satisfied when he produces evidence that he poses no danger to the community and no risk of flight. *Id.* The burden is not heavy, but it requires the defendant to "introduce at least some evidence." *Id.* When a defendant satisfies this burden, the presumption in favor of detention does not disappear, but becomes another factor to be weighed by the court. *Id.*

"[T]he government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Id.* at 946. The factors a court must consider in determining whether the government has met its burden of persuasion are (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including, among others, the defendant's family ties, financial resources, length of residence in the community, community ties, and criminal history; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g). But these factors may not be construed so as to modify or limit the presumption of innocence. *Id.* § 3142(j).

I evaluated the evidence presented at the bond hearing under the § 3142(g) factors and found the presumption of detention was overcome and that Salim presented terms and conditions sufficient to justify his release on bond pending trial. (Doc. No. 306). I first noted the seriousness

of the charges levied against Salim. (*Id.*); *see* 18 U.S.C. § 3142(g)(1). Salim was indicted on charges of conspiracy to provide material support to terrorists, providing material support to terrorists, and conspiracy to obstruct justice. (Doc. No. 1 at ¶¶ 25-279 & 292-98). I also identified my concern that Salim had resided in the United Arab Emirates for four years prior to his arrest for the instant offenses. (Doc. No. 306 at 31). And I pointed to a red flag with respect to the proposed conditions; Salim offered his mother Shakila Salim as a custodian, and she currently serves as the custodian for Salim's brother, Sultane Salim, who is also a co-defendant in this case. (*Id.*). This means the Salim brothers would reside together. (*Id.*). And while I would not prevent them from working together on a joint defense, I would normally impose an order of separation on released co-defendants to prohibit them from meeting up and discussing their case outside of defense preparation. (*Id.*).

I then evaluated Salim's history and characteristics. Salim has strong ties to Ohio, the state in which he would reside while released on bond. (*Id.* at 40); *see* 18 U.S.C. § 3142(g)(3)(A). Salim is thirty-seven years old. He was born in Ohio and lived here for the first twenty-six years of his life. (Doc. No. 306 at 40). He went to college here. (*Id.*). His mother and sister live here. (*Id.*). He is a United States citizen. (*Id.*). And he has no prior criminal history. (*Id.*); *see* 18 U.S.C. § 3142(g)(3).

Next, I considered the risk Salim would flee. The government brought forward no evidence of Salim having contacts or friends overseas. (Doc. No. 306 at 35). And the UAE, where Salim was living at the time of his indictment, cancelled his visa upon learning of the indictment. (*Id.* at 14-15). Salim was then taken into custody, and he subsequently waived any challenge to deportation. (*Id.* at 15). So there is a lack of evidence suggesting Salim is a flight risk.

Finally, I considered Ms. Salim's fitness as a custodian for both of her sons. (Doc. No. 306 at 39). Ms. Salim testified at the bond hearing to her ability and willingness to supervise both the Salim brothers and to report any violations of the release conditions. (*Id.* at 21-22). Additionally, I spoke with the supervising officer overseeing Sultane Salim's conditional release and Ms. Salim's performance as his custodian. (*Id.*). Ms. Salim has been Sultane's custodian for two years, and this arrangement has proven quite successful. (*Id.* at 19 & 40). The supervising officer holds Ms. Salim

out as a strong model custodian and believes she has the skills to monitor both Salim brothers. (*Id.* at 39-40).

Based on these and other considerations, I found the presumption of detention overcome, ordered Salim's release, and designated Ms. Salim as his custodian. (*Id.* at 41). I remain convinced of my findings, and so I now find the government is not likely to succeed on appeal.

**Likelihood of Irreparable Harm to the Government and to Salim**

The second and third *Griepentrog* factors consider whether the government will be irreparably harmed should I decline to issue a stay and whether anyone else, namely Salim, will be harmed if I grant the stay. 945 F.2d at 153. Looking first to the potential for irreparable harm to the government, the government contends that to deny a stay would cause it irreparable harm because of the nature of the charges against Salim. (Doc. No. 315 at 20). Because Salim is accused of providing financial support to a terrorist, the government claims "one can infer that Salim supports the violent jihad against the United States" advocated by that terrorist. (*Id.*). The government further claims that if Salim flees the country or jurisdiction, "the harm to the government is likewise significant." (*Id.*).

I am not convinced the government will suffer irreparable harm absent a stay pending its appeal. Salim is accused of serious crimes, but I found it appropriate to order his conditional release pending trial. (Doc. No. 306 at 41). I imposed several conditions that Salim must continuously meet in order to remain released on bond. (Doc. No. 313). These include, among others, a $500,000 property bond; electronic location monitoring; a home detention component of the location monitoring program; and a prohibition on accessing computer devices and the Internet without prior written approval. (*Id.*). Salim, as well as his wife and children, had to surrender their passports. (*Id.*). And like his brother, Salim will be subject to surprise visits from his supervising officer while released. These conditions will sufficiently limit Salim's movements and activities in such a way that addresses the government's concerns. And should the government prevail on its

appeal, Salim will be taken back into custody. The government therefore is in no danger of suffering irreparable harm.

As for harm to Salim, the government concedes that Salim will be harmed if I grant the stay. (Doc. No. 315 at 20). He would, after all, remain in custody pending resolution of the government's appeal. And as Salim argues, he will be hampered in his ability to prepare for trial. (Doc. No. 321 at 3). But the government believes its interest in community safety outweighs Salim's liberty interests. (Doc. No. 315 at 20).

The harm to Salim is obvious and real. And I disagree with the government's contention that safety concerns outweigh this harm, because as I stated above, I imposed conditions on Salim's release that are designed to protect the community and to assure Salim's presence throughout this case. I therefore find Salim will be harmed if I grant the stay.

**The Public Interest in Granting a Stay**

Finally, I must consider the public's interest in granting the stay. *Griepentrog*, 945 F.2d at 153. The government argues that the public interest would be harmed if I decline to grant the stay, because of the nature of Salim's charges and because he could flee the jurisdiction or the country. (Doc. No. 315 at 19-20 & 21). As I discussed above, I have imposed conditions on Salim's release designed to protect the community and prevent Salim's flight. (Doc. No. 313). And the government has produced no evidence of foreign contacts, only insisted that I presume Salim has foreign contacts because he resided in the UAE for the four years prior to being indicted. (Doc. Nos. 306 at 35 & 315 at 18).

Based on my evaluation of the *Griepentrog* factors, I find the government unable to justify its request for a stay pending its appeal. I therefore deny the government's emergency motion for a stay. (Doc. No. 315). But under Federal Rule of Appellate Procedure 8(a), the government may seek a stay from the Sixth Circuit. So I grant the government a temporary stay until March 9, 2018, to seek and obtain such a stay.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge